**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| MARIA DIAZ, | | |
| | * | |
| **Plaintiff,** | | |
| v. | * | Case No.: GJH-22-914 |
| | | |
| MEDICAL FACULTY ASSOCIATES, INC. | * | |
| | | |
| **Defendant.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Plaintiff Maria Diaz brings this civil action against Defendant Medical Faculty

Associates, Inc. ("MFA" or "Defendant") for employment discrimination based on national

origin and disability, and unlawful retaliation under the Maryland Fair Employment Practices

Act, Md. Code Ann., State Gov't § 20-606 ("MFEPA"). Pending before the Court is Plaintiff's

Motion for Leave to File Amended Complaint, ECF No. 16.[1] No hearing is necessary. *See* Loc.

R. 105.6 (D. Md. 2018). For the following reasons, Plaintiff's Motion is denied in part and

granted in part.

**I.    BACKGROUND**

"Plaintiff Maria Diaz is a resident of Frederick, Maryland" and at all times relevant to her

complaint was an employee of Defendant. ECF No. 16 ¶ 1. "Defendant MFA is a District of

Columbia corporation[.]" *Id.* ¶ 2.

Plaintiff is El-Salvadorian and was "the Breast Program Coordinator ['since October 9,

2017'] at MFA until November 1, 2021, when MFA was bought out or merged with Adventist

---

[1] Also pending before the Court is Defendant's Motion to Dismiss, ECF No. 7, and Plaintiff's Motion for Extension of Time to File Response/Reply, ECF No. 9, both of which are moot.

Healthcare Imaging on or about October 31, 2021." *Id.* ¶¶ 5, 6. Plaintiff's duties as the breast program coordinator included "working closely with the radiologist, ordering physicians, surgeons, and oncologists; and performing mammography or breast sonography at least two days a week and as needed throughout the week for patient volume demand." *Id.* ¶ 7. Plaintiff's 2019 employee evaluation indicated that she "achieved or exceeded Defendant's expectations[.]" *Id.* ¶ 8.

Plaintiff's "October 2020 Family Medical Leave" ("FMLA") was to expire on November 24, 2020. *Id.* ¶ 10.[2] In November 2020, Plaintiff "provided her manager, Ms. Hardison with a doctor's note stating that she was able to return to work on December 7th, 2020 with restrictions [on] her clinical duties" because Plaintiff had a "stress fracture to her right tibia, and in her lumber region[,]" which prevented her from "constant standing, kneeling, and walking[,]" and Plaintiff's clinical duties "required her to utilize her legs to perform medical exams." *Id.* Ms. Hardison asked Plaintiff to submit a work accommodation request. *Id.* ¶ 11.

On November 25, 2020 "Plaintiff submitted her application for a work accommodation to Ms. Grant at Occupation Health, [which] advised that her medical (non-clinical) restrictions would expire on December 7, 2020, [and] 'requested a reasonable accommodation to perform bone density scans and other non-clinical duties that could be done in a seated position.'" *Id.* ¶¶ 12, 13. Plaintiff spoke to Ms. Harrison from Human Resources ("HR") who "told Plaintiff she could not return to work until her accommodation [was] reviewed or until she [could] work without any restrictions." *Id.* ¶ 15.

---

[2] Plaintiff indicates that she suffered a non-work related injury to her right leg on an unspecified date. ECF No. 16 ¶ 9.

On December 22, 2020, Plaintiff visited her doctor where she received another doctor's note. Plaintiff texted Ms. Hardison and told her she could return to work on December 29, 2020, and Plaintiff "also expressed her mobility concerns with Ms. Hardison." *Id.* ¶¶ 17, 18.

On December 24, 2020, "Plaintiff was informed that her job duties would change when she returned to work, consisting of an increase in her clinical duties." *Id.* ¶ 19. When Plaintiff returned to work she "was scheduled to perform clinical duties consisting of mammogram exams [and] she experienced severe pain in both legs, making it difficult for her to constantly walk and stand." *Id.*

On January 4, 2021, Plaintiff "told her manager she was experiencing pain in her legs and requested relief from clinical duties for at least a month" and her manager, Ms. Hardison stated that "it shouldn't be a problem[,]" and "for the next two days Plaintiff was allowed to perform only her administrative duties." *Id.* ¶ 20. Also on January 4, 2021, Plaintiff had a meeting with Ms. Hardison and the radiologist assigned to her department, Dr. Kella, where she was "informed again that her job duties would change because the company was making changes to her original job description." *Id.* ¶ 21. Dr. Kella told Plaintiff that "if she was unable to perform the new job duties, then she should go find another job and they will hire someone able to do the job" to which Plaintiff responded "that she was able to do the job but needed some time to heal from her diagnosed injury." *Id.* In that same meeting, Ms. Hardison stated that giving Plaintiff some time won't be a problem, however, Plaintiff was later "instructed to perform more clinical duties in a Medical Assistant's absence." *Id.* ¶ 22.

On January 25, 2021, "Plaintiff's MRI detected new injuries in her left leg and knee[.]" Plaintiff "shared the findings with Ms. Hardison" who "advised Plaintiff to request another work accommodation." *Id.* ¶¶ 23, 24. Plaintiff submitted that request the same day. *Id.* ¶ 26.

3

On January 26, 2021, Plaintiff provided another doctor's note to Ms. Hardison stating that "Plaintiff is 'unable to perform any clinical duties such as patient exams for mammograms and/or ultrasounds until February 26th, 2021.'" *Id.* ¶ 27. That same day, Dr. Kella "asked Plaintiff if she wished she had help and further commented [that] Plaintiff should be looking for another job since her legs don't work." *Id.* ¶ 28. Plaintiff states that her co-workers "were calling her 'gimpy' in front of staff members and patients and asking Plaintiff if she was being abused at home" and "although Plaintiff reported those comments to her manager, [she] does not believe her complaints were addressed." *Id.* ¶ 30.

On February 1, 2021, Plaintiff's first accommodation request was denied, and Plaintiff explained that she desperately needed relief from clinical duties. *Id.* ¶¶ 25, 31. Ms. Harrison, in HR, told Plaintiff that "she could only return to work once she was off restrictions, and that HR would update her job description to include performing clinical duties four days a week, with only one day of administrative duties." *Id.* ¶ 31.

On February 5, 2021, Plaintiff was told again that she could not return to work until she could work without any restrictions, and she was advised to take medical leave. Plaintiff "informed management that she didn't have any additional hours to use under FMLA, [but] on that same day [she] took unpaid medical leave." *Id.* ¶ 32.

On February 17, 2021, Plaintiff "received a denial letter to her second work accommodation request [along with] her new job description." *Id.* ¶ 34. On that same date, Plaintiff "received an order from Advanced Pain Management advising that Plaintiff was to be on light duty restrictions (sitting job only) until February 22, 2021[.]" *Id.* ¶ 35.

On February 23, 2021, Plaintiff asked Occupational Health why her accommodations were being denied and they stated they did not know and advised Plaintiff to submit another

request. Plaintiff then submitted her third request that day. *Id.* ¶ 36. "Due to Defendant's refusal to accommodate, Plaintiff was out of work from February 5, 2021, until March 29, 2021." *Id.* ¶ 37.

Plaintiff states that Defendant's decision to deny Plaintiff's request was consistent with "how it treated another El Salvador employee[,]" and inconsistent with how it treated a "non-El Salvador employee's accommodation request." *Id.* ¶¶ 38, 42. Plaintiff states that a former MFA El Salvadorian employee was denied two work accommodation requests related to her lupus diagnosis and severe swelling in her knees. *Id.* ¶¶ 39–41. However, Mis. Tina Pietaniello, an American employee who was a Sonographer for MFA, was granted a work accommodation after a shoulder surgery. *Id.* ¶¶ 43, 44.

On March 3, 2021, "Plaintiff filed her complaint with the Maryland Commission on Civil Rights ("MCCR") alleging [employment] discrimination based on national origin, disability, and retaliation." *Id.* ¶ 46. On March 15, 2021, "Plaintiff received an email stating that Defendant [would] be replacing her job with a Medical Assistant." *Id.* ¶ 47. "On March 17, 2021, Defendant became aware of Plaintiff's MCCR complaint, and on March 22, 2021, Plaintiff was informed by Ms. Harrison that Plaintiff's second accommodation request was denied because she thought Plaintiff was unable to walk." *Id.* ¶ 48. "On March 24, 2021, Plaintiff was informed that her position as Breast Program Coordinator was eliminated, and that Plaintiff was being demoted to a full-time Mammogram Technologist upon Plaintiff's return to work with no restrictions." *Id.* ¶ 49. "Plaintiff's administrative duties as Breast Program Coordinator were given to a newly hired Medical Assistant," although Plaintiff could have performed those duties. *Id.* ¶ 50. Plaintiff received her right to sue letter on November 19, 2021. *Id.* ¶ 4.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Id*. (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). Of relevance here, an amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510.

An amendment is also futile if it would fail to withstand a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating the sufficiency of the plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). The Court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE*

*Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc.*

*v. Northwestern Bell Tel. Co*., 492 U.S. 229, 249–50 (1989)).

## III.   DISCUSSION

MFA argues that Plaintiff's Motion for leave to amend should be denied because it is

futile, as the amended complaint would still be subject to a motion to dismiss. ECF No. 17 at 2.[3]

As such, this Court will analyze Plaintiff's proposed Amended Complaint under the 12(b)(6)

motion to dismiss standard.

### A.  National Origin Discrimination (Count I)

MFA argues that Plaintiff's National Origin Discrimination claim fails because Plaintiff

has not shown satisfactory job performance, has failed to show that there was an adverse

employment action, and has failed to show an inference of discrimination. In an employment

discrimination case such as this, the plaintiff "is not required to plead facts that constitute a

prima facie case in order to survive a motion to dismiss, but factual allegations must be enough

to raise a right to relief above the speculative level." *Dyer v. Oracle Corp.*, No. PWG-16-521,

2016 WL 7048943, at *2 (D. Md. Dec. 5, 2016) (quoting *Coleman v. Md. Ct. of Appeals*, 626

F.3d 187, 190 (4th Cir. 2010)) (internal quotations omitted). "[M]FEPA is the State law analogue

to the federal employment discrimination statutes." *Gaines v. Balt. Police Dep't*, No. CV ELH-

21-1211, 2022 WL 1451629, at *31 (D. Md. May 9, 2022). "Maryland courts traditionally seek

guidance from federal cases in interpreting it." *Id.* (internal quotations and citations omitted).

Neither party has identified any relevant difference between MFEPA and Title VII, accordingly,

the Court will analyze the Plaintiff's MFEPA claims under the Title VII and Americans with

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Disabilities Act ("ADA") standards. *See id.*; *see also Parker v. Child.'s Nat'l Med. Ctr., Inc.*, No. CV ELH-20-3523, 2021 WL 5840949, at *6–7 (D. Md. Dec. 9, 2021).

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *Rajnauth-Suralie v. Dr. Steven L. Rattner*, DDS, PA & Assocs., No. PWG 20-CV-3175, 2021 WL 5742302, at *6 (D. Md. Dec. 2, 2021). A plaintiff may establish liability under Title VII by using one of two methods of proof "(1) demonstrating through direct or circumstantial evidence that [national origin] was a motivating factor in the employer's adverse employment action or (2) relying on the burden shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id.* at 4. "Under either avenue of proof, the focus is on whether a reasonable juror could conclude that illegal discrimination was a motivating factor in the employment decision." *Dyer v. Oracle Corp.*, 2016 WL 7048943, at *2 (citation omitted).

Plaintiff has not alleged any direct or circumstantial evidence of national origin discrimination by MFA; thus the Court will analyze her claims under the McDonnell Douglas burden shifting framework. Under that framework, to establish a prima facie case of discrimination, a Plaintiff must show that "that (1) [s]he is a member of a protected class; (2) [her] job performance was satisfactory; (3) [s]he suffered an adverse employment action; and (4) [s]he was treated differently from similarly situated employees outside the protected class." *Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 485 (D. Md. 2016) (quoting *Coleman*, 626 F.3d at 190). As noted above, Plaintiff is not required to prove a prima facie case of discrimination at the motion to dismiss stage, but it must nonetheless be plausible based on her factual allegations. *See Dyer v. Oracle Corp.*, 2016 WL 7048943, at *2. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting *Iqbal*, 556 U.S. at 678). Both parties agree that Plaintiff is a member of a protected class, as such the Court will start its analysis with the second prong of the McDonnell Douglas framework.

### 1. Satisfactory Job Performance

To show satisfactory job performance, "a plaintiff need not show that [she] was a perfect or model employee. Rather, a plaintiff must only show that she was qualified for the job and was meeting her employer's legitimate expectations." *Gaines*, 2022 WL 1451629, at *12 (quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019)). Plaintiff stated that she worked in her role as a breast program coordinator until November 1, 2021. ECF No. 16 ¶ 5. She also stated that her 2019 Employee Evaluation indicated that she achieved or exceeded Defendant's expectations and that her manager stated that "[Plaintiff] has made improvements this year in her breast skills, confidence, and even confronting issues. She is a key player at our center and she continues to take on challenges. She is flexible and helps at our POB office with xray and never complains about floating." ECF No. 16 ¶ 8. Plaintiff has also alleged that her employer did not administer evaluations in 2020 or 2021. At the motion to dismiss stage, these allegations are adequate to avoid dismissal. *See Gaines*, 2022 WL 1451629, at *13 (finding satisfactory job performance where Plaintiff alleged she was a qualified police officer with sixteen years on the force and had maintained her title). While Defendant notes that the alleged adverse action was sometime after the positive evaluation, no subsequent evaluation was provided, thus the Court can infer that she continued to perform adequately.

### 2. Adverse Employment Action

Defendant MFA next argues that Plaintiff cannot show that MFA took an adverse action against her because failure to accommodate, on its own, does not establish an adverse employment action, nor does her placement on temporary unpaid leave. ECF No. 17 at 4–6. The Court agrees. "An adverse employment action is a discriminatory act that 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" *Booth v. Cty. Exec.*, 186 F. Supp. 3d at 485 (quoting *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)). "Typical examples of adverse employment actions include 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'" *Id.* (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)).

Plaintiff alleges three adverse employment actions in connection with her national origin discrimination claim: (1) that she was not allowed to work in December while her accommodation request was under review; (2) Defendant increased Plaintiff's clinical duties after her request for an accommodation; and (3) Defendant encouraged Plaintiff to take additional leave without pay in February through March. ECF No 16, ¶¶ 15–18, 19, 21, 32–37. None of these alleged adverse employment actions are sufficient to support her discrimination claim. Plaintiff does not allege that there was any change in her pay, benefits, job title, or opportunities for promotion, or any other adverse impact. *See Holland,* 487 F.3d at 219 (holding that a job reassignment was not an adverse employment action when the plaintiff failed to show that it reduced his compensation or otherwise had an adverse impact). *See also Csicsmann v. Sallada*, 211 F. App'x 163, 168 (4th Cir. 2006) (in the retaliation context)[4] ("[a]s we have

---

[4] Although this case referenced an adverse employment action in the retaliation context, the burden for a plaintiff to prove an adverse employment action is higher in a discrimination case. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, (2006) (in a retaliation claim, the standard for an adverse action is more lenient than for a substantive discrimination claim). So, it is relevant that the Plaintiff cannot meet the lower retaliation standard here.

explained, finding an adverse employment action when an employer changes an employee's job focuses on metrics like the employee's salary, benefits, and opportunity for promotion."). Indeed, the provision of medical leave, even unpaid, has actually been considered by courts to be an accommodation and not an adverse employment action. *See Austgen v. Allied Barton Sec. Servs. LLC*, 815 F. App'x 772, 775 (5th Cir. 2020). As such, MFA's telling Plaintiff to take leave, could not on its own, constitute an adverse employment action. *See Parker v. Child.'s Nat'l Med. Ctr., Inc.*, 2021 WL 5840949, at *14 ("[a] reasonable accommodation may also include accrued paid leave or unpaid leave."). (Citing 29 C.F.R. pt. 1630 app. § 1630.2(o)). Therefore, Plaintiff has failed to allege an adverse action sufficient to claim national origin discrimination.

### 3. Similarly Situated Employees

Finally, Defendant argues that Plaintiff fails to raise an inference of discrimination through her use of a comparator employee. ECF No. 17 at 7. Since Plaintiff makes no allegations of direct discrimination, she may raise an "inference of [national origin] discrimination based on a comparison to the treatment of a similarly-situated coworker who was treated more favorably under similar circumstances." *Booth v. Cty. Exec.*, 186 F. Supp. 3d at 486. Plaintiff and the comparator must be "similar in all relevant respects … such as whether the employees had the same supervisor, were subject to the same standards, [and did not have] such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). However, plaintiffs are not required as a matter of law to use comparator evidence to establish an inference of unlawful discrimination so long as they can do it through other means. *Gaines*, 2022 WL 1451629, at *13.

Plaintiff states that an American employee, Ms. Tina Pietaniello, a sonographer for Defendant from November 2015 to April 2021, was granted a work accommodation to her

schedule, permitting her to work four hours per day after a shoulder surgery. ECF No. 16 ¶¶ 43, 44. Plaintiff has failed to allege that Ms. Pietaniello is a sufficiently similar comparator. She has not alleged that Ms. Pietaniello had the same, or similar work schedule, the same or similar job duties, the same or similar working environments and standards, the same or similar length of accommodations, or even the same supervisor. Without such information Plaintiff's claims cannot rise above speculation.[5] *See Parker v. Ciena Corp.*, 2016 WL 153035 at \*4 (D. Md. Jan. 12, 2016) (holding that Plaintiff did not raise an inference of discrimination because she "alleged no factual basis for what happened 'during the course of her interview' to support her conclusion [of not being hired]." Her allegation that it was "because [the] decision makers were biased is simply too conclusory. Only speculation can fill the gaps in her complaint-speculation as to why two 'non-Black candidates' were selected to fill the positions instead of her."). Plaintiff has therefore failed to allege a sufficiently similar comparator to raise an inference of discrimination and the Court will deny Plaintiff's motion to amend her national origin discrimination claim.

### B.  Disability Discrimination/Failure to Accommodate (Count II)

MFA argues that Plaintiff has failed to plausibly allege that she is disabled and has failed to allege she could perform the essential functions of her position. The ADA prohibits discrimination by employers against qualified individuals with a disability. 42 U.S.C. § 12112. The ADA bars not only "disparate treatment because of an employee's disability," but also "the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability,'" and "'denying employment opportunities to a job applicant or employee,' where the denial of the employment opportunity 'is based on the

---

[5] Plaintiff also states that another El Salvador employee (someone in the same protected class as Plaintiff), a Patient Services Employee, was not granted a work accommodation, and she uses this El Salvador employee to also compare to Ms. Pietaniello. Plaintiff's claims still suffer the same fate.

need ... to make reasonable accommodation.'" *Meyer v. DynCorp Int'l, LLC*, No. GJH-19-3412, 2020 WL 5513436, at *4 (D. Md. Sept. 14, 2020) (quoting *Shin v. Univ. of Md. Med. Syst. Corp*., 369 F. App'x 472, 479 (4th Cir. 2010)) (quoting 42 U.S.C. §§ 12112(a), 12112(b)(5)(A), 12112(b)(5)(B)). To state a failure to accommodate claim, Plaintiff must plead facts that show "(1) that [s]he had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position; and (4) that the employer refused to make such accommodation." *Wirtes v. City of Newport News*, 996 F.3d 234, 238–39 (4th Cir. 2021). MFA only contests factors (1) and (3), and as such the Court limits its analysis to those two factors and finds that Plaintiff has failed to plead facts sufficient to state a failure to accommodate claim.

### 1. Disability

The ADA defines a "disability," in part, as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 (4th Cir. 2001) (quoting 42 U.S.C. § 12102(2)(A)). "The amended Act provides that the definition of disability shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted[.]" *Eubanks v. Mercy Med. Ctr., Inc.*, No. CV WDQ-15-513, 2015 WL 9255326, at *4 (D. Md. Dec. 17, 2015). "The EEOC subsequently revised its regulations to reflect the amendments. EEOC regulations state that '[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage' and is 'not meant to be a demanding standard.'" *Id.* at *5 (quoting 29 C.F.R. § 1630.2(j)(1)(i)). "Although the scope of 'disability' under the ADA should be interpreted broadly, it is not without limit." *Id.* Substantially limits means "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition,

manner, or duration under which the average person in the general population can perform that same major life activity." *Rhoads*, 257 F.3d at 387 (quoting 29 C.F.R. § 1630.2(j)(1)(ii) (2000)). "Examples of major life activities are 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Id.* (quoting 29 C.F.R. § 1630.2(i)). "Courts in the Fourth Circuit have held that allegations are insufficient to support a claim under the ADA when they contain no facts showing that the impairment substantially limited a major life activity." *Eubanks*, 2015 WL 9255326, at *5. "The question of whether a plaintiff is disabled or has a record of disability under the ADA is a question of law for the court." *Meyer v. DynCorp Int'l, LLC*, 2020 WL 5513436, at *4 (internal quotations and citations omitted). "To resolve this question, the court must make an 'individualized inquiry, particular to the facts of each case.'" *Id.* (quoting *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001)).

Plaintiff has alleged sufficient facts to show that her leg injury amounts to a substantial limitation. Plaintiff alleged that she suffered a right leg injury and was diagnosed with a stress fracture to her right tibia and lumber region that prevented her from constant standing, kneeling, and walking. ECF No. 16 ¶ 10. She submitted her request for a work accommodation to be relieved of her clinical duties and to perform bone density scans and other non-clinical duties that could be done in a seated position because her clinical duties required her to utilize her legs. *Id.* ¶ 12–14. Plaintiff then provided a doctor's note to MFA in December 2020, permitting her to return to work "without restrictions"[6] on December 29, 2020. *Id.* ¶ 18. Furthermore, Plaintiff alleges that "she experienced severe pain in both legs, making it difficult for her to constantly walk and stand[,]" that "her limping was obvious to coworkers and management," and that her

---

[6] The doctor's note did not identify what the restrictions were.

"MRI detected new injuries in her left leg and knee, most likely from overusing that leg while compensating for the limited use of her right leg." *Id.* at 8–10. After the MRI in January, Plaintiff provided another doctor's note advising that she was "unable to perform any clinical duties such as patient exams for mammograms and/or ultrasounds until February 26, 2021." *Id.* ¶¶ 23, 27. Although Plaintiff's injury was not long in duration, duration is just one factor in determining whether the impairment substantially limits a major life activity. *See Eubanks*, 2015 WL 9255326, at *5. ("Instead of classifying all short term impairments as non disabilities, courts should look at duration as simply 'one factor that is relevant in determining whether the impairment substantially limits a major life activity.'") (quoting 29 C.F.R. § 1630.2(j)(1)(ix) (app.)). Furthermore, although Plaintiff's first doctor's note did not explicitly state what Plaintiff's restrictions were, the case law does not insinuate, or require, that a disability be established solely by virtue of a doctors note, and in any fashion, her second doctor's note indicated a restriction on her clinical duties and Plaintiff had simultaneously informed Defendant of the MRI results and injury to her leg. Under the broad definition of disability, Plaintiff has asserted enough facts to allege a substantial limitation to a major life activity. *See Meyer v. DynCorp Int'l, LLC*, 2020 WL 5513436, at *5 (finding that Plaintiff sufficiently alleged a disability where his injury affected his ability to climb, crawl, bend, kneel, lift more than five pounds, or sit or stand more than thirty minutes). Although Plaintiff has plead facts to meet factor one and show disability, Plaintiff has failed to plead facts to meet the third factor in the analysis.

### 2. Essential Functions

MFA argues that Plaintiff has failed to allege that she can perform the essential functions of the job. An individual is a "qualified individual" "if they can perform the essential functions

of the employment position they hold … either with or without reasonable accommodation."
*Wirtes*, 996 F.3d at 239 (citation omitted). A reasonable accommodation may include "job
restructuring, part-time or modified work schedules, reassignment to a vacant position,
acquisition or modification of equipment or devices, appropriate adjustment or modifications of
examinations, training materials or policies ... [,] and other similar accommodations." *Id.* at 240.
"Essential functions are those 'that bear more than a marginal relationship to the job at issue.'"
*Meyer v. DynCorp Int'l, LLC*, 2020 WL 5513436, at *5 (quoting *Tyndall v. Nat'l Educ. Centers,
Inc. of Cal.,* 31 F.3d 209, 213 (4th Cir. 1994)) (citations omitted). "In any determination of a
position's essential functions, 'consideration shall be given to the employer's judgment.'"
*Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1009 (4th Cir. 2020). "Plaintiff bears the
burden of demonstrating that she could perform the essential functions of [her] job." *Meyer v.
DynCorp Int'l, LLC*, 2020 WL 5513436, at *5 (quoting *Tyndall*, 31 F.3d at 213). Plaintiff has not
pled facts sufficient to show that she could perform the essential functions of her job.

Plaintiff states that her job duties included "working with the radiologist, ordering
physicians, surgeons, oncologists, and performing mammography or breast sonography at least
two days a week and as needed throughout the week for patient volume demand." ECF No. 16 ¶
7. Plaintiff has alleged no facts as to how she could perform any of these duties she mentions
with or without a reasonable accommodation. Specifically, Plaintiff only alleges that she
requested to be relieved of her clinical duties and to perform bone density scans and other non-
clinical duties, including administrative duties until she recovered. *Id.* ¶¶ 12-14, 20. Not only
does Plaintiff fail to state how she could perform her duties with or without reasonable
accommodation, she does not sufficiently allege, beyond a conclusory statement, that the clinical
duties she was requesting be eliminated were not essential to her job. The Court cannot fill in the

blanks for Plaintiff. Plaintiff's statement that "her request to refrain from performing clinical duties would have allowed her to continue performing the essential functions of her job[,]" *Id.* ¶ 62, is nothing more than a conclusory allegation that the Court cannot accept absent factual content as to the requirements of the job. *See Rubino v. New Action Mobile Indus., LLC*, 44 F. Supp. 3d 616, 622 (D. Md. 2014) (holding that Plaintiff pled "no factual content as to the requirements of the job or his qualifications, [only that] he is capable of performing the essential functions of his job with a reasonable accommodation." The court found this to be "a legal conclusion that is couched as an allegation of fact. [plaintiff's] allegation regarding this threshold requirement of any ADA claim is a threadbare recital of an element of a cause of action that is insufficient to state a claim under Rule 12(b)(6)."). As such, the Court will not permit Plaintiff's Amended Complaint as to her Failure to Accommodate claim.

### C.  Retaliation (Count III)

MFA alleges that Plaintiff cannot establish her retaliation claim because she fails to allege an adverse employment action and but-for causation. "To establish a prima facie case of retaliation under Title VII a plaintiff must prove '(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)). In a retaliation claim, the standard for an adverse action is more lenient than for a substantive discrimination claim. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). "Retaliatory actions need not 'affect the terms and conditions of employment[.]'" *Strothers v. City of Laurel*,

895 F.3d 317, 327 (4th Cir. 2018) (quoting *Burlington*, 548 U.S. at 64). "An adverse action is

one that constitutes a significant change in employment status, such as hiring, firing, failing to

promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011)

(internal citations omitted). A plaintiff can satisfy this element by "show[ing] that a reasonable

employee would have found the challenged action materially adverse, 'which in this context

means it well might have dissuaded a reasonable worker from making or supporting a charge of

discrimination.'" *See Evans v. Int'l Paper Co.,* 936 F.3d 183, 195 (4th Cir. 2019) (quoting

*Burlington*, 548 U.S. at 68). With respect to the third element of the prima facie case, Plaintiff

must prove that "but-for" the protected activity, no adverse action would have been taken against

her. *See Brady v. Bd. of Educ. of Prince George's Cty.*, No. GJH-15-2196, 2016 WL 7655423, at

*9 (D. Md. 2016) (citing *Staley v. Gruenberg,* 575 Fed. App'x 153, 156 (4th Cir. 2014)). The

Fourth Circuit has recognized that the discharge of an employee soon after he engages in a

protected activity is "strongly suggestive of retaliatory motive," *Meyer v. DynCorp Int'l, LLC,*

2020 WL 5513436, at *13 (quoting *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)), and "gives

rise to a sufficient inference of causation to satisfy the prima facie requirement." *Id.* (quoting

*King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003)). The parties do not dispute that Plaintiff has

engaged in a protected activity, and this Court finds that Plaintiff has sufficiently alleged an

adverse employment action and but-for causation to state a claim for retaliation.

  Plaintiff alleges the following adverse employment actions in connection with her

retaliation claim: (1) Defendant prevented Plaintiff from returning to work in December; (2)

Defendant forced Plaintiff to take unpaid leave in February and March; (3) Defendant increased

Plaintiff's clinical duties; and (4) Defendant eliminated Plaintiff's position as breast program coordinator and demoted her to a mammogram technologist.

Specifically, as it pertains to (4), Plaintiff filed her MCCR complaint on March 3, 2021, and Defendant learned of that complaint on March 17, 2021. Then on March 24, 2021, Plaintiff was told that her position as breast program coordinator was being eliminated and she was being demoted to a full-time mammogram technologist, and her previous administrative duties were being given to a newly hired medical assistant. ECF No. 16 at ¶¶ 46–50. Plaintiff's alleged job elimination, her demotion, and her job duties being given to someone new, particularly when Plaintiff alleged, she could have, and did request to perform those duties, is sufficient to allege an adverse action in the retaliation context. The proximity in timing between Plaintiff's MCCR complaint, Defendant's being notified of the complaint and Plaintiff's alleged demotion is sufficient for the Court to find but-for causation. As such Plaintiff will be permitted to amend her Complaint as to her retaliation claim.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion is denied in part and granted in part. A separate Order follows.


Date: <u>February 22, 2023</u>                          __/s/_____
                                                        GEORGE J. HAZEL
                                                        United States District Judge